**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

**CIVIL ACTION NO. 05-96-JBC**

**CRAIG A WILSON,**                                                                  **PLAINTIFF,**

**V.**                          **MEMORANDUM OPINION AND ORDER**

**LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT,**                                                      **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \* \***

This action is before the court upon the plaintiff's motion for a preliminary

injunction (DE 2).

On or about January 4, 2005, Craig Wilson attempted to sell two tickets to a

University of Kentucky basketball game for less than face value outside of Rupp

Arena.  The "prospective buyers" were actually police officers employed by the

Lexington-Fayette Urban County Government Police Department.  Officers Hernton

and Burdette arrested the plaintiff for violating City Ordinance § 15-1.1, "Sale of

goods in Lexington Center Area."  About 20 other people were also arrested for

violating the Ordinance, which states, in pertinent part,

> (2) It shall be unlawful for any peddler to sell, or offer for sale, food
> or goods while in the Lexington Center area, at any time during the
> two (2) hours preceding a ticketed Rupp Arena event or during the
> one (1) hour following a ticketed Rupp Arena event.  Goods shall
> include tickets to any event taking place in Rupp Arena.
> (3) Any peddler who shall sell or offer for sale food or goods in
> violation of this section shall be fined not to exceed two hundred
> fifty dollars ($250.00) or be imprisoned for a period not to exceed
> seven (7) days, or be both so fined and so imprisoned.

The plaintiff was convicted of violating the Ordinance and was required to pay a

fine and court costs.

**Standing**

The defendants argue that Mr. Wilson does not have standing to bring this action and that there is no real controversy before the court.  In order to have standing, a plaintiff must have suffered an "injury in fact" which is "concrete and particularized" and "actual or imminent."  *Embry v. Cloverport*, No. 3:02-CV-560-H, 2004 WL 191613, at *1 (W.D. Ky. Jan. 22, 2004)(*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  There must be a causal connection between the injury and the challenged conduct.  *Id*.  Finally, the injury must be redressable.  The plaintiff must show actual present harm or a significant possibility of future harm.  *Blakely v. United States*, 276 F.3d 853, 873 (6th Cir. 2002).  Past exposure to illegal conduct alone does not establish a present case or controversy.  *Id*.  As to future harm, while the plaintiff initially stated that his conduct on January 4 of this year this was a "one-time sale" of his personal property, he claims in his reply that he "would like to be able to engage in conduct unlawfully prohibited by the city."  Further, at the hearing on this matter, Mr. Wilson testified that he would like to sell tickets in front of Rupp Arena within two hours prior to a ticketed event.

*Lainer v. Boston*, 95 F. Supp. 2d 17 (D. Mass. 2000), involves facts similar to those presented by Mr. Wilson.  In that case, a citizen was arrested for selling his extra baseball tickets at face value in front of Fenway Park.  The charges

2

against the plaintiff were dismissed prior to his filing a request for injunctive relief.[1] Nonetheless, while not squarely addressing the standing issue, the court determined that if arrests under the flawed statute are unconstitutional then the plaintiff is at risk of irreparable injury.   For purposes of this motion, the court finds that Mr. Wilson has standing.

**Preliminary Injunction**

In deciding a motion for a preliminary injunction, the court must consider whether the plaintiff has shown a strong likelihood of success on the merits; whether the plaintiff has shown irreparable injury; whether the issuance of a preliminary injunction would cause substantial harm to others; and where the public interest lies. *See, e.g.*, *United States v. Brown*, 988 F.2d 658, 660 (6th Cir. 1993).

**Likelihood of Success on the Merits**

The plaintiff alleges that the Lexington police have a policy of arresting citizens who are not "peddlers" and charging them with violating the Ordinance. The plaintiff asks the court to enjoin this allegedly unlawful policy.  Second, the plaintiff claims that the Ordinance unconstitutionally restricts commercial speech. Third, the plaintiff claims that the Ordinance is void for vagueness.  The plaintiff also claims that the Ordinance is an unconstitutional prior restraint on free speech because it gives officials unbridled discretion to determine whether to grant a peddler's license.  However, as the city has shown that it grants such a license to

---

[1] These facts contrast with the present case, as the charges against Mr. Wilson were fully adjudicated and he was found guilty of violating the Ordinance.

3

anyone who applies and pays the fee, per the terms of LFUCG Ordinance § 13-13, this last argument is unavailing.

**Unlawful Enforcement**

The plaintiff first argues that he is not a "peddler" because selling tickets is not his occupation, and thus it was unlawful to enforce the Ordinance against him. The definition of "peddler," found in Chapter 13, "Licenses and Regulations," does not include any language requiring that such sales be the seller's occupation. A "peddler" is defined as "[a]n individual who carries his merchandise with him while traversing the streets, sidewalks or alleys of Fayette County for the purpose of exhibiting and selling such merchandise." City Ordinance § 13-1 (28), "Definitions." The plaintiff's argument is that the following language excludes the plaintiff from the definition of "peddler":

> (a) The urban county council hereby finds that the following occupations are of such a nature as to require special regulation and supervision; therefore, the following minimum license fees are imposed on every person engaged in the business, occupation, calling or profession, or using, holding or exhibiting articles named in this section, who shall pay in advance to the urban county government for each calendar year, or fraction thereof, the license fee or fees herein set forth, which payment shall be a credit on the license fee as otherwise provided in this article; however, where minimum fees are set forth in the following table for a period of one (1) year or less, the same shall be considered the minimum fee due for the period as set forth in such table and shall be paid in advance of engaging in such activity . . . (23) Peddler. . . .

§ 13-13, "Special Fees." The plaintiff argues that the city's inclusion of a "peddler" in its occupational licensing scheme is significant to show that the

enforcement of the Ordinance against one-time sellers is contrary to the terms of the Ordinance.  The plaintiff does not have a high likelihood of success on the merits of his claims.  First, he admitted that he was a "peddler" for purposes of the Ordinance when he pled guilty.  He is precluded from relitigating that claim in federal court under the guise of 42 U.S.C. § 1983.  *Walker v. Schaeffer*, 854 F.2d 138, 142-43 (6th Cir. 1988)(nolo contendere plea in state court estops plaintiff from asserting lack of probable cause in federal § 1983 action).  In contrast, the plaintiff in *Lainer* was never found guilty of violating the statute at issue, the claims against him were dismissed, and he was not precluded from bringing § 1983 false arrest claims.  Second, the plaintiff has not shown that he does not fit within the definition of a "peddler."  The plaintiff's argument hinges not on the definition of the term, but on the placement of "peddler" in a section of an ordinance discussing occupational licensing.  While the plaintiff's arguments may become more clear as litigation progresses, the evidence currently before the court is insufficient to establish a high likelihood of success on the merits of this claim.

**Unconstitutional Restriction of Commercial Speech**

Municipalities have the authority to impose reasonable, content-neutral restrictions on the time, place, and manner of speech in public areas.  *Ater v. Armstrong*, 961 F.2d 1224 (6th Cir. 1992).  The Ordinance promotes public safety, a significant governmental interest, by controlling pedestrian and vehicular traffic in the streets and sidewalks and by limiting congestion near a public arena before an

5

event.  *Kentucky v. Illinois Central Railroad Co.*, 129 S.W. 96 (Ky.  1910)(city authorities control public streets; presume they act in city's best interests).  The Ordinance is narrowly tailored.  It restricts sales only in the immediate vicinity of Rupp Arena and only for the two hours prior and one hour following a ticketed event.

In *Loska v. Los Angeles*, 188 Cal. App. 3d 569 (Cal. App. 1986)*,* the court upheld the constitutionality of the city's anti-ticket-selling ordinance, construing it to prohibit the sale of tickets to a public assemblage by a ticket seller in the business of selling tickets (not just a one-time seller) in any public place.  The court stated, "It offends our sense of fairness to impose criminal penalties on the citizen who casually one-time disposes of his ticket anywhere on the public streets. . . of Los Angeles without making any profit therefrom."  The Lexington ordinance is much more narrow than that discussed in *Loska* – ticket sales are prohibited only within a close proximity to Rupp Arena and only for a matter of hours before and after an event.  This narrow tailoring leaves ample alternatives available to those wishing to sell tickets (or other goods).  *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  Such a restriction on speech is constitutional.

**Vagueness**

Finally, the Ordinance is not vague.  The language of the Ordinance relates that the sale of all goods by peddlers is prohibited within the Lexington Center area for two hours prior to and one hour after a Rupp Arena ticketed event.  Vague

6

regulations are prohibited in part to ensure that citizens have fair notice of prohibited conduct. *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972). A law is void for vagueness if ordinary people "must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926). The plaintiff does not elucidate the portion of the Ordinance that he finds vague, and the court finds the language in the Ordinance clear and specific. While the plaintiff argued at the hearing that the Ordinance is vague because no reasonable person would know that selling tickets at face value is prohibited, that is not the legal standard for vagueness. A law need not be intuitive to be valid. In order to show that it is vague, the plaintiff needs to produce evidence that it cannot be understood as written, which the plaintiff has not done. *See id.*

In light of the reasonable time, place, and manner restrictions contained within the Ordinance, its content neutrality, and legitimate governmental purposes, the plaintiff is unable to demonstrate a high likelihood of success at this point in the litigation. Accordingly,

**IT IS ORDERED** that the plaintiff's motion for a preliminary injunction (DE 2) is **DENIED.**

7

Signed on May 19, 2005

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY